IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


J. E. DUNN CONSTRUCTION COMPANY,
a Missouri corporation,

      Plaintiff,

v.                                                        Case No.:

UNIFIED GOVERNMENT OF ATHENS-
CLARKE COUNTY, GEORGIA, a political
subdivision of the State of Georgia,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, J. E. DUNN CONSTRUCTION COMPANY ("J.E. Dunn" or "Contractor"), by and through its undersigned counsel, sues Defendant, the UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNY, GEORGIA ("County" or "Owner"), and states:

### **Summary**

This lawsuit arises from the construction of the new Akins Ford Arena located in Athens, Georgia, which the County hired J.E. Dunn to construct. The Arena officially opened on the afternoon of Friday, December 13, 2024, with a ribbon cutting ceremony followed by a home game that night for the Athens Rock Lobsters professional hockey team. The opening weekend events continued the next day with the Arena's inaugural concert featuring The B-52s and on Sunday with a 3-hour community open house that was free and open to the public. Since opening, the Arena has hosted nearly 200 events including approximately 59 professional hockey games, 18 concerts, 21 graduations, 8 Disney on Ice performances, 5 Monster Jam performances, and 2 Harlem Globetrotters performances. The concerts included sold-out performances by county music stars

Megan Moroney, Riley Green, and Gavin Adcock. The Arena even hosted the Vice President of the United States, JD Vance, at a Turning Point USA town hall. In the first year of operation alone over 300,000 guests attended events at the Arena.

Despite this, the County has taken the position that the Arena is still not substantially complete and has wrongfully withheld over $10 million in retainage owed to J.E. Dunn. The County has also wrongfully withheld nearly $7 million owed to J.E. Dunn for additional work and delays to the Project that were outside of J.E. Dunn's control, as well as over $800,000 in progress payments owed to J.E. Dunn. The County's wrongful withholding of these funds is a material breach of County's contract with J.E. Dunn and a violation of Georgia law.

## Parties, Jurisdiction, and Venue

1. J.E. Dunn is a Missouri corporation with its principal place of business located at 100 Locust Street, Kansas City, Missouri 64106.

2. The County is a political subdivision of the State of Georgia, with its principal place of business located at 301 College Avenue, Athens, Georgia 30601.

3. This Court has original subject matter jurisdiction over this action under 28 U.S.C § 1332(a) because: (1) there is complete diversity of citizenship among the parties; and (2) J.E. Dunn's claims against the County exceed $75,000, exclusive of interest, costs, and attorneys' fees.

4. Venue is proper under 28 U.S.C. § 1391 and Local Rule 3.4 of this Court as the County resides in Athens, Georgia, and the Project is located in Athens, Georgia.

5. All conditions precedent required for J.E. Dunn to bring this action have been satisfied or waived.

6. J.E. Dunn has retained the undersigned counsel to represent it in its claims against the County and has agreed to pay the undersigned counsel a reasonable fee.

## General Allegations

### Project Background and Agreement

7.    In 2020, the County solicited bids for the design, administration, and construction of a new arena and event facility, commonly known today as the Akins Ford Arena (the "Project").

8.    The County hired Perkins + Will ("Architect" or "Design Professional") as the Design Professional responsible for the design of the Project.

9.    The County hired Impact Development Management, LLC ("Impact" or "Project Administrator") as the Project Administrator responsible for acting as the County's representative on the Project.

10.    After hiring the Design Professional and the Project Administrator, the County began the selection process for a contractor through the County's Request For Qualifications RFQ #CC A-AREN A1 DP Classic Center Arena, SPLOST 2020 Project No. 03.  Through that process the County ultimately selected and hired J.E. Dunn to construct the Arena.

11.    On or about November 15, 2021, the County and J.E. Dunn entered into a Construction Management Agreement (the "CM Agreement") for the Project. The CM Agreement included three exhibits and 71 pages of General Conditions.  A true and correct copy of the CM Agreement is attached hereto as **Exhibit A**.

12.    Subsequent to executing the CM Agreement, the parties executed a Guaranteed Maximum Price Amendment ("GMP Amendment") that was incorporated into the CM Agreement. The GMP Amendment included the agreed Contract Price, Contract Time, and J.E. Dunn's scope of work on the Project.  A true and correct copy of the GMP Amendment is attached hereto as **Exhibit B**.

13.     The Contract Price, Contract Time, and scope of work were all based on written drawings and specifications prepared by the County's Design Professional.

**Despite J.E. Dunn Substantially Completing the Project,
the County Refuses to Pay J.E. Dunn its Retainage**

14.     J.E. Dunn achieved substantial completion of the Project on December 11, 2024.

15.     The next day, December 12, 2024, the Arena's Instagram page for the Project advertised to the public that "The hard hats are off and Opening Weekend is ON!"

16.     The Arena officially opened on Friday, December 13, 2024, with a ribbon cutting ceremony followed by a professional hockey game.

17.     Opening weekend events also included the Arena's inaugural concert and a 3-hour community open house.

18.     Since opening on December 13, 2024, the Arena has hosted nearly 200 events including professional hockey games, concerts, graduations, and special performances.

19.     Several events hosted by the Arena have been sold-out. To date, over 300,000 guests have attended events at the Arena.

20.     Given the continuous, sometimes at capacity, use of the Arena, there can be no reasonable dispute that the Project achieved Substantial Completion on December 11, 2024.

21.     In fact, the County's own website states that "The arena opened in December 2024."

22.     Pursuant to O.C.G.A. Section 13-10-80(b)(2)(C)(2021), at substantial completion, the County was required to pay to J.E. Dunn all owed retainage, less a withholding of 200% of the value of "remaining incomplete minor items."

23.     After Substantial Completion, J.E. Dunn submitted to the County an application for payment for its withheld retainage ($10,473,874.00), less a withholding of 200% of the value of the remaining incomplete minor items ($250,000.00), for a total amount of $10,223,874.00.

24.    The County never objected to J.E. Dunn's estimated value of the remaining minor items of $250,000 nor did the County ever direct or advise J.E. Dunn to increase its estimated value for such items.

25.    After submitting its application for payment for withheld retainage, J.E. Dunn timely completed all remaining incomplete minor items.

26.    J.E. Dunn has timely provided the County with all required notice, documents, and information necessary to be entitled to payment of its retainage on the Project.

27.    As of the date of the filing of this Complaint, the County has wrongfully failed and/or refused to pay J.E. Dunn its retainage.

**Project Delays and Changes Beyond J.E. Dunn's Control**

28.    The CM Agreement provides for increases in Contract Time and Costs in the event of delays or changes outside of the Contractor's control. During construction, J.E. Dunn experienced numerous delays and changes that were outside of its control and for which it is entitled to additional time and money.

*Georgia Power Transformer Delay*

29.    On or about October 31, 2023, the Project's electric utility provider, Georgia Power, visited the Project and reviewed design elements for the transformer enclosure.

30.    The Project's original design, provided by the County's Design Professional, specified that chain-link fence be used for the transformer enclosure.

31.    Georgia Power required the originally specified chain-link fence enclosure be changed to either concrete or CMU block filled with concrete.

32.    J.E. Dunn timely notified the County that this redesign of the transformer enclosure would delay obtaining permanent power to the Project and delay substantial completion

of the Project.

33.     The County's Design Professional took several months to complete the redesign of the transformer enclosure.  The redesign was eventually formalized as Architect's Supplemental Instruction 44 issued on March 24, 2024 ("ASI 44").

34.     The delay caused by the redesign of the transformer enclosure caused numerous other delays, including delays to the construction of the transformer pad, setting of the exterior mechanical equipment, final transformer setting and testing by Georgia Power, rooftop equipment startup, cooling tower installation, low-voltage installation in the electrical room, startup of the ice plant, and other downstream items.

35.     To mitigate the significant delay caused by the transformer enclosure redesign, J.E. Dunn re-sequenced work and stacked activities. By doing this, J.E. Dunn was able to reduce the critical-path delay to the substantial completion date.

36.     In mitigating the delay caused by the transformer enclosure redesign, J.E. Dunn incurred significant subcontractor costs.

37.     J.E. Dunn was not responsible for these increased subcontractor costs, yet it proactively paid its subcontractors for the extra work caused by the redesign to avoid unnecessary disputes and further delays to the Project.

38.     Ultimately, J.E. Dunn incurred **$2,759,232.00** for extra work, delay costs (including extended general conditions), and other related costs as a direct result of the redesign of the transformer enclosure.

39.     J.E. Dunn timely provided the County with all required documentation supporting its claim for **$2,759,232.00** and additional Project completion time.

40.     The County has wrongfully denied J.E. Dunn's claim and failed and/or refused to

6

grant J.E. Dunn additional time and pay J.E. Dunn the additional costs it is owed.

### *Suite Level Precast Support Redesign*

41.     On or about April 25, 2024, it was discovered that the precast concrete seating on the suite level had deflected more than the allowable amount.

42.     In an effort to mitigate any potential delays and increased costs, J.E. Dunn immediately began implementing corrective work at its own expense prior to any determination of the responsible party.

43.     J.E. Dunn retained third-party engineering consultants, who determined that the initial structural steel designed by the County's Design Professional was under-designed.

44.     As a result of J.E. Dunn's investigation, the County's Design Professional issued Architect Supplemental Instructions 49, 51, and 60, which changed the original design of the structural steel supporting the precast concrete seating.

45.     The redesign and corrective work related to the suite level precast concrete seating caused a delay to the substantial completion date.

46.     J.E. Dunn incurred $**2,405,474.43** in damages due to the suite level precast redesign issue. These damages include costs incurred for extra work performed, delay costs including extended general conditions, and other related costs.

47.     J.E. Dunn timely provided the County with all required documentation supporting its claim for $**2,405,474.43** and additional Project completion time.

48.     The County has wrongfully denied J.E. Dunn's claim and failed and/or refused to grant J.E. Dunn additional time and pay J.E. Dunn the additional costs it is owed.

### *Changes to Project Design by the Authority Having Jurisdiction*

49.     On December 11, 2024, the local fire marshal issued a Temporary Certificate of

Occupancy ("TCO").

50.     The TCO listed additional items (that represented changes to the Project Design) required for the Project to receive a "final" Certificate of Occupancy including, but not limited to: removal and adjustment of blackout curtains, removal and replacement of all fire caulking, changes to railings to comply with the Americans with Disabilities Act, modifications to exit signs, changes to the number and location of fire extinguishers, removal of exterior fencing, changes to the fire alarm system, and alterations to fire lane striping in the parking areas.

51.     Other local authorities including the elevator inspector, health inspector, and boiler inspector also required changes to the Project to obtain a final Certificate of Occupancy.

52.     None of the changes required by the inspectors were due to any defect or deficiency in J.E. Dunn's work.

53.     The changes to the Project required by the inspectors resulted in an additional days of work for J.E. Dunn.

54.     J.E. Dunn incurred damages of $**920,796** due to the changes required by the inspectors. These damages include the cost of extra work performed, delay costs (including extended general conditions), and other related costs.

55.     J.E. Dunn timely provided the County with all required documentation supporting its claim for $**920,796**.

56.     The County has wrongfully denied J.E. Dunn's claim and failed and/or refused to pay J.E. Dunn the additional costs it is owed.

<u>*Other Miscellaneous Claim Items*</u>

57.     In addition to the delays and related claims above, J.E. Dunn has also incurred damages related to other smaller miscellaneous claims including, without limitation:

8

A. Additional work performed in the amount of **$168,541.00** to address known design deficiencies to the cooling tower piping as described in ASI 068.

B Additional work performed pursuant to PCIs 115, 208, 239, 241, 242, 246 and 250 in the amount of **$140,555.00**.

C. Additional work performed pursuant to PCIs 189 and 221 in the amount of **$53,450.00**.

D. Work outside of the original scope of the Agreement in the amount of **$15,995.78**, for which the County wrongfully denied J.E. Dunn's claim for payment.

58. J.E. Dunn timely provided the County with all required documentation supporting all its claims for additional time and money.

59. The County has wrongfully denied J.E. Dunn's claims and failed and/or refused to grant J.E. Dunn additional time and pay J.E. Dunn the additional costs it is owed.

### Count I – Breach of Contract

60. J.E. Dunn incorporates and realleges Paragraphs 1 through 59 above as if fully set forth herein.

61. The CM Agreement, as amended, is a valid and binding contract between J.E. Dunn and the County.

62. At all times J.E. Dunn complied with and fully performed according to the CM Agreement, as amended.

63. J.E. Dunn timely provided the County with all notice, documentation, and information required to be entitled to payment of its retainage and payment of its claims for additional time and money on the Project.

64. The County has wrongfully failed and/or refused to pay J.E. Dunn the retainage due and owing to J.E. Dunn, which is a material breach of the CM Agreement.

65. The County has wrongfully denied J.E. Dunn's claims for additional time and money on the Project and failed and/or refused to grant J.E. Dunn the additional time and pay J.E. Dunn the additional costs it is owed, which is a material breach of the CM Agreement.

66. The County has wrongfully withheld over $800,000 in progress payments owed to J.E. Dunn, which is a material breach of the CM Agreement.

67. As a direct result of the County's material breaches of the CM Agreement, J.E. Dunn has suffered damages of at least **$17,747,917.61**, exclusive of interest and costs.

WHEREFORE, J.E. Dunn demands judgment in its favor and against the County for its damages, pre- and post-judgment interest, and costs, together with any further relief deemed just and proper.

DATED this 6<u>th</u> day of August 2026.

/s/ Bruce A. Norris
Bruce A. Norris, Esq.
Georgia Bar No.: 545834
*Primary*:       ban@kirwinnorris.com
*Secondary*:   azt@kirwinnorris.com
John A. Hockin, Esq.
Georgia Bar No.: 540684
*Primary*:       jah@kirwinnorris.com
*Secondary*:   rcr@kirwinnorris.com

**KIRWIN NORRIS, P.A**.
840 S. Denning Drive, Suite 200
Winter Park, Florida 32789
Phone: 407-740-6600
Fax:     407-740-6363

*Counsel for Plaintiff J.E. Dunn Construction Company*